[No. B086059. Second Dist., Div. Two. Jan. 17, 1996.]

CALIFORNIA STATE ELECTRONICS ASSOCIATION, Plaintiff and Appellant, v.
ZEOS INTERNATIONAL LTD., Defendant and Respondent.

## Counsel

Richard I. Fine for Plaintiff and Appellant.

Dorsey & Whitney, Jeffrey L Sikkema and David G. Hagopian for Defendant and Respondent.

## Opinion

**FUKUTO, J.**—This action was brought to compel compliance with the Song-Beverly Consumer Warranty Act's requirement that manufacturers of goods sold in California with express warranties provide for local repair facilities to fulfill those warranties. (Civ. Code, § 1793.2, subd. (a)(1)(A).) Defendant Zeos International Ltd. (Zeos), a non-California manufacturer and mail-order distributor of personal computers, moved for summary judgment on grounds the requirement did not apply to it, because its sales are not made in California, or alternatively that the statute was invalid because in conflict with the commerce clause of the United States Constitution and a federal statute. The trial court pretermitted the question of the section's applicability to Zeos, and granted summary judgment on grounds the law was unconstitutional. On plaintiff's present appeal, Zeos reasserts all of the reasons for summary judgment it adduced below. We conclude that Zeos was entitled to judgment because the section did not apply to its sales. We therefore affirm the judgment without reaching the constitutional issues, which the trial court should not have decided.

## Statement

Plaintiff California State Electronics Association is a trade association of individuals and businesses that perform warranty service on consumer electronic products. In 1992, plaintiff commenced this action against Zeos and 26 other non-California personal computer hardware manufacturers, seeking injunctive relief pursuant to Business and Professions Code section 17200 et seq. Plaintiff alleged that Zeos and its codefendants were selling computers to California residents through magazine advertisements with toll-free telephone numbers. The complaint asserted that Zeos, like the other defendants, "delivers its products directly to California residents without prior purchaser inspection before delivery and with title passing in California." Although the defendants advertised express warranties accompanying their merchandise, none had complied with the requirements of Civil Code section 1793.2, subdivision (a)(1)(A), requiring provision of warranty service facilities in

California.[1] Defendants' noncompliance allegedly worked substantial injury on plaintiff, the public, and the economy. Plaintiff prayed for preliminary and permanent injunctions requiring defendants to establish service facilities in California or to make arrangements for performance of their warranty service by independent service facilities here.

Answering, Zeos admitted that "it typically delivers its products to common carriers who, in turn, deliver such products to California addresses without prior purchaser inspection." As affirmative defenses, Zeos alleged that section 1793.2, subdivision (a)(1)(A) restrained interstate commerce, in violation of the commerce clause of the United States Constitution (art. I, § 8, cl. 3), and that it conflicted with the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (15 U.S.C. § 2301 et seq.).

Zeos moved for summary judgment, relying on its affirmative defenses just cited and also on the ground that section 1793.2, subdivision (a)(1)(A) was inapplicable to Zeos's sales to California residents, which did not occur in California because title to the goods did not pass there. In support of its motion, Zeos submitted declarations by its corporate controller and senior sales director, setting forth the following facts.

Zeos is a mail-order manufacturer of personal computer equipment located in Minneapolis, Minnesota. It advertises in publications and provides a toll-free number for customers. Telephone orders are paid for by credit card. The salesperson obtains from the customer the address to which the products ordered are to be shipped. Zeos packages and labels the order for shipment, and has it picked up at company headquarters by Federal Express or a similar carrier. The customer is charged for this "freight" cost, which in the case of a sample, $3,143 purchase by a Calabasas customer amounted to $75.

Zeos offers a one-year warranty on its products, under which the customer must, if necessary, return the defective product to Zeos at customer expense for repair or replacement. Zeos also provides a 24-hour toll-free service line, through which many problems are solved without requiring such return. For

---

[1]Undesignated section citations hereafter are to the Civil Code. Section 1793.2 is a part of the Song-Beverly Consumer Warranty Act, section 1790 et seq. (hereafter Consumer Warranty Act). Subdivision (a)(1)(A) of section 1793.2 provides: "(a) Every manufacturer of consumer goods sold in this state and for which the manufacturer has made an express warranty shall: [¶] (1)(A) Maintain in this state sufficient service and repair facilities reasonably close to all areas where its consumer goods are sold to carry out the terms of those warranties or designate and authorize in this state as service and repair facilities independent repair or service facilities reasonably close to all areas where its consumer goods are sold to carry out the terms of the warranties."

an additional $49, the customer may purchase a contract for in-home warranty service, to be performed by a service company under contract to Zeos, supplied with Zeos parts.

The court granted summary judgment on grounds section 1793.2, subdivision (a)(1)(A) violated the commerce clause, because "the effect of this legislation is to create a situation where almost all warranty work on products sold in California will have to be done by California repairers. This . . . effect, which discriminates against repairers in all other states, violates the Commerce Clause . . . ." In so ruling, the court assumed, without deciding, that the statute applied to Zeos's sales, even though cognizant that a negative ruling on that issue would have averted any need to reach the constitutional question.[2]

## DISCUSSION

By deciding Zeos's case on constitutional grounds, rather than first resolving whether, as a matter of law, the legislation plaintiff sought to enforce even applied to Zeos, the trial court doubly inverted the proper order of proceeding. The court assumed and declined to analyze the question that lay at the threshold of both plaintiff's case against Zeos and Zeos's own invocation of the commerce clause. ■ Further, by pursuing the issue of section 1793.2, subdivision (a)(1)(A)'s constitutionality without first resolving its applicability, the court directly disregarded "the ' "well-established principle that [a] [c]ourt will not decide constitutional questions where other grounds are available and dispositive of the issues of the case." ' [Citations.] That principle is itself an 'application of the larger concept of judicial self-restraint, succinctly stated in the rule that we do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us.' [Citations.]" (*Santa Clara County Local Transportation Authority* v. *Guardino* (1995) 11 Cal.4th 220, 230 [45 Cal.Rptr.2d 207, 902 P.2d 225].)

Observing these principles, we steer clear of the constitutional questions that the trial court embraced, and instead inquire first into Zeos's contention

---

[2]The court explained its approach in response to counsel's inquiries: "Let me put it this way . . . . I felt that this overriding concern the commerce clause was so important that I was not going to deal with the question and make an absolute determination for purposes of this case as to where the sale was. Obviously if the sale is in Minnesota it doesn't matter whether [the statute] is constitutional or not. And therefore if you want me to I will say that for purposes of determining the commerce clause argument I will find that the sale is in California. [¶] . . . [¶] [Counsel]: I take it that is only with respect to how it affects the constitutional issue not a finding for any other purpose in this case? [¶] THE COURT: If it were to turn out that I were to find this statute unconstitutional, and if on appeal it was reversed, I don't feel that I would be bound as to the issue of where the sale took place. Because I think that this is such an overriding issue that we should know the answer to this before getting into the terribly difficult UCC concepts."

that the judgment in its favor should be sustained because Zeos's products are not "sold in this state" (§ 1793.2, subd. (a)(1)(A)).[3] In so doing, we follow the established rule that a summary judgment, like any other, will be affirmed if legally correct, without regard for the particular reasons invoked by the trial court. (E.g., *Troche* v. *Daley* (1990) 217 Cal.App.3d 403, 407-408 [266 Cal.Rptr. 34].) Contrary to plaintiff's assertion, such review and affirmance do not require a cross-appeal by Zeos, which does not assert error in the judgment but merely seeks to defend it on an alternative ground, which was asserted below. (See *California State Employees' Assn.* v. *State Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7 [223 Cal.Rptr. 826].) Nor does consideration of a theory the trial court did not adopt involve impermissible appellate fact-finding, as plaintiff also contends. Rather than finding facts, we determine simply whether the undisputed facts that Zeos tendered established an absence of triable issues and entitled it to judgment as a matter of law.[4]

Section 1793.2, subdivision (a)(1)(A) in terms imposes its local warranty service facility requirements upon manufacturers of consumer goods "sold in this state." (See fn. 1, *ante.*) Indeed, those facilities must be reasonably close to where the "goods are sold." For purposes of the section, and the rest of the Consumer Warranty Act, " 'Sale' means (1) the passing of title from the seller to the buyer for a price, or (2) a consignment for sale." (§ 1791, subd. (n).) Zeos sells its goods to California consumers directly through telephone orders, and thus does not make consignments for sale within California. The question whether Zeos's goods are sold in California therefore depends upon where title passes from Zeos to its California retail customers.

Zeos contends that this issue should be appraised under the California Uniform Commercial Code. There are sound reasons for doing so. The Consumer Warranty Act itself provides that its provisions shall preserve the rights and obligations of buyers and sellers "determined by reference to the Commercial Code," except in the event of a conflict between the

---

[3]Because the trial court's constitutional ruling was an advisory opinion, unnecessary to the judgment as we affirm it, that ruling cannot serve as collateral estoppel with respect to plaintiff's claims against other defendants in this action (assuming any remain). (See 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 268, p. 710; see also *id.*, § 276, pp. 716-717.)

[4]Those facts, previously summarized, were stated in Zeos's declarations. Plaintiff offered no contrary evidence, but did interpose lengthy evidentiary objections. The general rule is that such objections are considered waived on appeal if, as here, the trial court did not rule on them. (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207].) Moreover, our independent review of plaintiff's objections confirms that the decisive facts were competently shown.

provisions of the latter and the rights guaranteed buyers by the former. (§ 1790.3.) ■ It has therefore been held that the Consumer Warranty Act "was intended to supplement the provisions of the California Uniform Commercial Code, rather than to supersede the rights and obligations created by that statutory scheme," and thus provisions of the California Uniform Commercial Code governing sales properly attach to those of the Consumer Warranty Act. (*Krieger* v. *Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 215 [285 Cal.Rptr. 717]; see *id.* at p. 213.) ■ Here, there is facially no conflict between the two statutes; indeed, for purposes of division 2 of the California Uniform Commercial Code, pertaining to sales, a "sale" also is defined as passage of title from seller to buyer for a price, just as in the Consumer Warranty Act. (Cal. U. Com. Code, § 2106, subd. (1).) Moreover, that division applies to Zeos's sales to its customers, which are transactions in "goods." (Cal. U. Com. Code, §§ 2102, 2105; cf. *RRX Industries, Inc.* v. *Lab-Con, Inc.* (9th Cir. 1985) 772 F.2d 543, 546 [computer software].)

Section 2401 of the California Uniform Commercial Code governs when and where title passes between seller and buyer. (See also Cal. U. Com. Code, § 2106, subd. (1), which cross-references the definition of "sale" to § 2401.) Preliminarily, plaintiff asserts that this particular section should not apply to the issues of sale and transfer of title for purposes of the Consumer Warranty Act. Plaintiff cites the statutory comment to the effect that "This section, however, in no way intends to indicate which line of interpretation should be followed in cases where the applicability of 'public' regulation depends upon a 'sale' or upon location of 'title' without further definition." (U. Com. Code com., 23A West's Ann. Cal. U. Com. Code, § 2401 (1964 ed.) p. 361.) However, the comment goes on to explain, "It is therefore necessary to state what a 'sale' is and when title passes under this Article in case the courts deem any public regulation to incorporate the defined term of the 'private' law." (*Ibid.*) As just reviewed, the Consumer Warranty Act, in terms and by judicial interpretation, does incorporate the concepts of sale by passage of title contained in the California Uniform Commercial Code. Accordingly, we look to section 2401 of that code in considering Zeos's sales for purposes of section 1793.2, subdivision (a)(1)(A).

Subdivision (2) of California Uniform Commercial Code section 2401 provides that "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . and in particular . . . [¶] (a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to

the buyer at the time and place of shipment; but [¶] (b) If the contract requires delivery at destination, title passes on tender there." Thus, when the parties agree to or contemplate shipment by the seller, title passes to the buyer upon that shipment, unless the agreement specifically requires the seller to make delivery at the destination.

The evidence showed that Zeos's sales operation consists of telephone orders which are shipped at the buyer's expense via an overnight express service. The paperwork Zeos prepares and sends to the buyer, with the goods or shortly after their shipment, contains no provision requiring Zeos to deliver the goods to the buyer. These facts plainly mark Zeos's terms as "shipment" contracts, which is the presumptive form. (See U. Com. Code com., 23A West's Ann. Cal. U. Com. Code, § 2503, *supra*, p. 411 ["under this Article the 'shipment' contract is regarded as the normal one and the 'destination' contract as the variant type."]; *Droukas* v. *Divers Training Academy, Inc.* (1978) 375 Mass. 149, 157-158 [376 N.E.2d 548, 553].) The provision for buyer payment of shipping charges further fortifies this construction. (*Id.* at p. 158 [376 N.E. 2d at pp. 553-554].) The result is that title passes from Zeos to its California customers in Minnesota, not California.

California Uniform Commercial Code section 2401, subdivision (1) provides another qualification for passage of title between buyer and seller: "Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 2501) . . . ." This qualification does not interfere with the conclusion that Zeos's sales occur in Minnesota. Under California Uniform Commercial Code section 2501, "In the absence of explicit agreement identification occurs [¶] (a) When the contract is made if it is for the sale of goods already existing and identified; [¶] [or] (b) If the contract is for the sale of future goods . . . , when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers . . . ." Under these provisions, the identification of Zeos's specific goods to a given sale occurs no later than the time of shipment, and that remains the point of sale.

The undisputed facts thus established that Zeos's sales transpire in Minnesota, not California, and hence are not subject to section 1793.2, subdivision (a)(1)(A). From this it follows that plaintiff's action, based on alleged violations of that statute, had no merit with respect to Zeos, and Zeos was entitled to summary judgment for that reason.

## DISPOSITION

The judgment is affirmed.

Boren, P. J., and Zebrowski, J., concurred.

A petition for a rehearing was denied February 6, 1996.